IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CEDRIC MINOR**                                                                            **PLAINTIFF**

**v.**                                         **No. 4:22CV125-JMV**

**MARSHALL TURNER**                                               **DEFENDANT**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Cedric Minor, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendant failed to protect him from attack by other inmates. For the reasons set forth below, the motion by the defendant for summary judgment will be granted, and the instant case will be dismissed.

**Factual Allegations**

The plaintiff, Cedric Minor, is in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the South Mississippi Correctional Institution ("SMCI"). Doc. 1 at 2. Minor seeks relief against defendant Mississippi State Penitentiary ("MSP") Superintendent Marshall Turner in his individual and official capacities for failing to protect him from alleged assault by other inmates. Minor alleges that on or about December 27, 2018, he witnessed his cell mate commit suicide. Doc. 1-1 at 1. He was moved to a holding cell while prison staff investigated his former cell mate's death. *Id.* at 2.

Minor alleges that Warden Morris and Turner then informed him that he would be moved to another housing unit and that his property would be brought to him. *Id*. He states that, later that same day, "one of the staff members" stated he would be moved to a building with a member of the Vice Lords gang; his deceased cell mate had been member. *Id*. He further alleges that he told the staff members he was in fear for his life because other members of the gang suspected he had killed his cell mate. *Id*. According to Minor, staff nonetheless placed him in a cell with one of the gang members. *Id*. at 3. He also states that he did not receive his property after he was moved. *Id*. He contends that, as a result of being placed in a cell with the gang member, he was physically attacked for a week. *Id*. He stated he "had knots and bruises, but staff wouldn't allow [him] to see a doctor." Doc. 1.

Minor supplemented these claims with three exhibits and three supporting documents. Doc. 1-1, 1-2, 1-3, 1-4. Three of the exhibits were handwritten accounts of the events. Doc. 1-1, 1-2, 1-3. Minor's supporting documents included a letter from Lee Simon informing him that his property had been located and would be forwarded to him. Doc. 1-4 at 2. Minor also attached a letter from Scott Middlebrooks, Warden with Mississippi State Penitentiary, stating that the facility was not in receipt of his property. Doc. 1-4 at 1. Lastly, Minor attached a medical document dated October 11, 2021, detailing a diagnosis of bipolar disorder and post-traumatic stress disorder. Doc. 1-4 at 3.

On May 15, 2023, the court dismissed Minor's claims regarding the loss of his property and denial of access to the courts. Doc. 43. As such, only the failure to protect claim against defendant Turner remains.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Eleventh Amendment Sovereign Immunity

As a preliminary matter, Minor's claims against defendant Turner in his official capacity must be dismissed, as Turner is cloaked with sovereign immunity under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment prohibits actions against a state actor without the state's consent. *Brooks v. George County, Mississippi*, 84 F.3d 157, 168 (5th Cir. 1996). MDOC is an arm of the state, and its officers and employees, in their official capacities, are officers of the state. *See Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (*citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("a suit against a state official in his or her official capacity ... is no different from a suit against the State itself.") As such, the plaintiff's claims against defendant Turner in his official capacity will be dismissed with prejudice, as he is cloaked with sovereign immunity under the Eleventh Amendment.

### The Plaintiff Did Not Exhaust His Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). The requirement prisoners exhaust the grievance process before filing a § 1983 suit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). Minor's institutional record reflects that he reported to Mississippi State Penitentiary staff that he was "in fear for his life from Vice Lords" and wished to be relocated to the Central Mississippi Correctional Facility. *See* Doc. 58-2 at 2. However, he

never filed a grievance regarding his fear or the alleged attack. Doc. 58-4. As such, he failed to exhaust his administrative remedies for that issue, and the instant case must be dismissed for that reason.

### Supervisor Liability

The plaintiff's claims against the sole remaining defendant, Marshall Turner, Superintendent of the Mississippi State Penitentiary, arise out of his role as a supervisor. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated his constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury.[1] *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

---

[1] The plaintiff has not alleged that Turner implemented a policy which led to the plaintiff's exposure to inmates hostile to him. As such, the court will discuss only whether Turner had personal involvement in the alleged incidents.

The plaintiff alleges that he asked Superintendent Turner about his safety, and Turner replied that he would be kept safe. Docs. 1-1, 1-2. The plaintiff alleges that he was later moved to a different cell, where his cell mate attacked him, and the staff did not help him. Doc. 1-2. After being removed from his cell and placed in a holding tank, Turner, through Warden Morris, told the plaintiff that he could not return to the same building, and that the plaintiff would be sent to another housing unit. *Id*. According to MDOC housing records, on December 28, 2018, (the day after the plaintiff's cell mate committed suicide) the plaintiff was relocated from Unit 29, Bld K, Zone B to Unit 29, Bld I, Zone A (a different building). Doc. 58-1. On January 3, 2019, he was relocated to yet another building, Unit 29, Bld A, Zone B. *Id*. A week later, on January 10, 2019, he was moved to another building, Unit 29, Bld B, Zone A. *Id*.

The next day, he was transferred out of the MSP and relocated to the Central Mississippi Correctional Facility ("CMCF"), where he stayed until January 14, 2019. *Id*. He was transported to the Wilkinson County Correctional Facility on January 22, 2019, where he stayed for over a year. *Id*. The plaintiff has not alleged that defendant Turner personally conducted the intra-facility transfers – or the transfer out of the Mississippi State Penitentiary. The allegations, at most, state that defendant Turner, in his capacity as Superintendent, ordered his subordinates to transfer and transport the plaintiff.

Hence, in this case, the plaintiff does not allege that defendant Turner had any personal involvement or was causally connected to the incident in any way. The plaintiff has alleged neither that Turner affirmatively participated in the events described, nor that he implemented a policy that caused the alleged violation. *Woods*, *supra*. As such, the plaintiff's allegations against Superintendent Marshall Turner must be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Superintendent Turner Is Shielded by Qualified Immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37. Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this case, the law regarding the duty of prison officials to protect a prisoner from harm at the hands of other inmates is well-established. *See Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and

disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The question in the present case is whether defendant Turner was deliberately indifferent to a substantial risk that the plaintiff would be harmed by other inmates. The plaintiff has not made this showing. Taking the plaintiff's assertions at face value, he merely voiced his concern for his safety to Superintendent Turner, who answered that he would be kept safe. It is not clear precisely when this exchange took place; however, once the plaintiff expressed this fear to his Case Manager on January 10, 2019, he was transported to another facility the next day. Doc. 58-

2 at 1-2. The plaintiff has not shown that Superintendent Turner chose to move him to a particular cell, knew the cell into which the plaintiff was moved – or which inmates might pose a danger to him.

In addition, the plaintiff's medical records do not reflect that he was injured. On January 3, 2019, before his transfer out of the Mississippi State Penitentiary, he had a clean appearance, no lacerations, no contusions, no bruises, no abdominal pain, clear breathing, no chest pain, no headaches or dizziness, good speech, and a good gait. Doc. 58-3 at 2-3. In addition, the nurse noted no skin tears, bruises, or abrasions – and that the plaintiff told her he was not injured. *Id*. at 3. Neither was he injured upon his January 11, 2019, arrival at the Central Mississippi Correctional Facility. His CMCF intake examination revealed: no medical, mental health, or dental complaints, a neat and appropriate appearance, no signs of abuse or trauma, and no acute or chronic deformities. *Id*. at 8. These reports by medical personnel from two different facilities are inconsistent with a week's worth of beatings, as the plaintiff alleged in his complaint. Doc. 1 at 5.

Marshall Turner's actions were not objectively unreasonable in the light of the law established at the time of the incident. *See Heitschmidt*, 161 F.3d at 836-37. Put simply, the Cedric Minor has not shown that Superintendent Turner was plainly incompetent or knowingly violated the law regarding the plaintiff's safety. To the extent Marshall Turner took part in the events at issue, it appears that Turner, at most, directed subordinates to move the plaintiff away from the Mississippi State Penitentiary one day after he told his Case Manager he was in danger. Defendant Turner is thus cloaked with qualified immunity, and the plaintiff's claims against him must be dismissed.

## Conclusion

For the reasons set forth above, the defendant's motion [58] for summary judgment will be granted:

(1) The instant case will be dismissed without prejudice for failure to exhaust administrative remedies;

(2) The case will be dismissed with prejudice as the defendant enjoys both qualified immunity (in his individual capacity) and Eleventh Amendment immunity (in his official capacity);

(3) The case will be dismissed with prejudice for failure to state a claim upon which relief could be granted, as the defendant, a supervisor, cannot be held liable for the actions of his subordinates; and

(4) A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 10th day of October, 2023.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE